Montgomery County Bar Association *v.*
Rinalducci, Appellant.

Argued January 17, 1938.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*William A. Gray,* with him *Elmer T. Menges,* for appellant.

*Charles Townley Larzelere,* with him *Wallace M. Keely* and *Jonathan B. Hillegass,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, March 21, 1938:

Three petitions were filed by the Montgomery County Bar Association, through its secretary, with the Committee of Censors, making various charges against appellant. These petitions followed the rules of that county which provide the procedure for disciplining members of the bar. The misconduct charged was denied, and hearings were held by the Committee of Censors, which, on the evidence produced, recommended disbarment. Exceptions were filed in the court of common pleas, but in all but minor particulars the findings of fact were sustained, and disbarment was ordered. It is only on appeal to this Court that the procedure below is attacked as not due process. The objection is

that the proceedings were not initiated by the court, and as the judges had not personally heard all of the evidence, appellant was denied a substantive right. Thus an effort is made to bring into issue the constitutionality of the Montgomery County rules of court relating to disbarment.

Appellant not having raised this issue below, it is now too late. Matters not raised in, or considered by, the court below cannot be invoked on appeal even though they involve constitutional questions: *Smith v. Yellow Cab Co.*, 288 Pa. 85; *Commonwealth v. Budd Wheel Co.*, 290 Pa. 380; *Commonwealth v. Motors' Mortgage Corp.*, 297 Pa. 468, 473; *Gordon v. Hartford Sterling Co.*, 319 Pa. 174. This is true notwithstanding the fact that property rights under the due process clause are involved *(Smith v. Yellow Cab Co.*, supra, at p. 88; see also *Commonwealth v. Motors Mortgage Co.*, supra; 11 Am. Jur. 765) and the right to practice law is a property right: *Ex parte Steinman and Hensel*, 95 Pa. 220, 237. The constitutional validity of a rule of court stands on the same plane as that of a statute. The issue must be raised in the court below: *Selling v. Berger*, 161 Mich. 526. Appellant, without objection, availed himself of the procedure below; he appeared and took exceptions as provided by the rule of court. He cannot now be heard to complain of its illegality. Numerous cases hold that one who invokes, or acquiesces in, an unconstitutional enactment or proceeding is barred from asserting its invalidity: *Phila. v. Ridge Ave. Ry. Co.*, 142 Pa. 484; *Levin v. Fourth St. Nat. Bank*, 277 Pa. 350; *Taylor v. Haverford Township*, 299 Pa. 402, 408; *In the Matter of ————, an Attorney*, 86 N. Y. 563, 568. However, because of the seriousness of the charges against appellant and of the increasing use throughout the State of the procedure herein employed, we will pass upon the constitutionality of the rule and the proceedings.

The Supreme Court of the United States has held that due process forbids disbarment without adequate notice and opportunity to be heard: *Randall v. Brigham*, 7 Wall. 523, 540; *Ex Parte Robinson*, 19 Wall. 505, 512; *Ex Parte Wall*, 107 U. S. 265. "The office of an attorney is his property, and he cannot be deprived of it unless by the judgment of his peers or the law of the land, this last phrase meaning, as we have been taught by Lord COKE, 'due process of law'" which requires: "reasonable notice and . . . an opportunity to be heard in his own defense": *Ex Parte Steinman and Hensel*, supra, at p. 237. Where and how notice is to be given, and its form, are left to the sound judgment of the court before whom the attorney practices, as is also the form or manner of hearing. No case attempts to regulate this procedure and each court is, provided some notice and an opportunity to be heard are afforded, a law unto itself in so far as admission, discipline and disbarment of lawyers are concerned. Our Constitution and the Federal Constitution do not guarantee to an attorney the right of trial by jury in disbarment or disciplinary cases: *Ex Parte Wall*, supra; *Smith's Appeal*, 179 Pa. 14, 22; *Balogh v. Jackson*, 272 Pa. 482; *Barach's Case*, 279 Pa. 89, 95; *Dixon v. Minogue*, 280 Pa. 128. The power to discipline its officers inheres in the court itself: *Austin's Case*, 5 Rawle 191; *In re Davies*, 93 Pa. 116; *Wolfe's Disbarment*, 288 Pa. 331, 334; *In re Disbarment Proceedings*, 321 Pa. 81; *Kraus's Case*, 322 Pa. 362, 366; *Ex Parte Wall*, supra. As stated in *Childs et al. v. Smeltzer*, 315 Pa. 9, 15: "A duly admitted attorney is an officer of the court and answerable to it for dereliction of duty."

Since the court before whom the attorney practices has undoubted power to provide its own method for hearing, and formulate such rules as it sees fit to discipline, disbar, or admit to practice, a proceeding for professional misconduct may be taken in any way which will sufficiently apprize the attorney of the grounds

upon which it is founded, and afford him an opportunity to be heard. See *In re Disbarment Proceedings,* supra, pp. 100-101.

The procedure here was lawful; the censors are equivalent to standing masters, and a master, referee or committee may hear these matters and report their findings and recommendations to the court. Many other jurisdictions have employed such procedure. See *People v. Mead,* 29 Colo. 344; *People v. Gilbert,* 263 Ill. 85; *In re Fourchy,* 175 La. 628, certiorari denied in *Fourchy v. Fletchinger,* 288 U. S. 589; *In re Mundy,* 182 La. 148; *In re McCue,* 80 Mont. 537; *In the Matter of Eldredge,* 82 N. Y. 161, 167; *In re Jones,* 70 Vt. 71; *In re Attorney,* 39 U. C. Q. B. 171, 184. A few courts have indicated they believe it unsafe to rely on a master's hearing *(State ex rel. Fowler v. Finley,* 30 Fla. 325; *In re Smith,* 73 Kans. 743; *In the Matter of Chandler,* 105 Mich. 235; *In re Duncan,* 64 S. C. 461), but none hold that such hearings fail to meet the requirements of due process. It is a question of policy for the individual court and not a matter involving the due process clause.

In the courts of this State reference of charges to a master or committee has been recognized. As early as *In re Davies,* supra, a county court relied on testimony taken before a commissioner, and disciplinary measures were approved by this Court. In *Kennedy's Disbarment,* 178 Pa. 232, there was reference by the lower court to a lawyer as "examiner to take testimony on said rule and report the same to the court." Again the action below was sustained. And, in *Hurst's Case,* 317 Pa. 217, we recently upheld proceedings for disbarment involving the appointment of examiners under Rule 20, Paragraph 14, of the Lancaster County Common Pleas Court. Although in none of these cases was the propriety of reference discussed, we approved the procedure followed.

By promulgating Supreme Court Rule 17, and by entertaining proceedings thereunder, this Court has stamped its approval on reference of disbarment hearings to committees and the like. The mechanism for disbarment under this Rule is discussed in *Rosenbaum's Case*, 300 Pa. 465; *Klensin v. Board of Governance*, 312 Pa. 564, and *Alexander's Case*, 321 Pa. 125. In *Rosenbaum's Case*, supra, at p. 466, it is pointed out: "The Board of Governance had its origin with the Bar of the State and was appointed by us upon its representation that such a body would greatly aid in maintaining proper standards of conduct and practice among its members and enable the profession to discipline itself. Their findings come to us carrying weighty presumptions of justice and propriety." In the *Klensin Case*, supra, at p. 575, in answer to the argument that it was not due process to have the hearing before masters instead of the Board itself, we pointed out that the procedure was proper, and referred to the different functions of the Board and the Court itself: "Respondent has misapprehended the functions of the Board. Its function is to determine, assuming the findings of the hearing masters to be correct, whether the recommendations of the masters to us are warranted. The judicial review is at our hands, not by the Board."

The establishment of this form of procedure for the discipline of attorneys emanates from the Court's inherent power over such matters. This is true not only of the Supreme Court, but also of the inferior courts. Here the procedure followed was substantially the same as that laid down by our Rule 17. The corresponding rule of the Montgomery County Court sets up a local counterpart of the Board of Governance pursuant to the now-recognized policy of our courts to allow the profession a hand in disciplining its members. The procedure set up by Rule 17 is proper beyond question, and that under the Montgomery County rule is equally valid.

We have examined the record and approve the findings and order of disbarment; appellant is likewise disbarred from practice before this Court.

Order affirmed at appellant's cost.